Dale W. Cottam, WSB No. 6-2719
Ronald J. Lopez, WSB No. 7-4697
BAILEY STOCK HARMON COTTAM LOPEZ LLP
6234 Yellowstone Road
P.O. Box 1557
Cheyenne, Wyoming 82003-1557
(307) 638-7745
dale@performance-law.com
ronnie@performance-law.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2024 MAR -6  PM 3: 21

MARGARET BOTKINS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE CONVERSE COUNTY BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -v- | ) |
| | ) |
| UNITED STATES SMALL BUSINESS | )   Case No. _24-CV-54-ABJ_ |
| ADMINISTRATION and ISABEL CASILLAS | ) |
| GUZMAN in her capacity as Administrator of | ) |
| the United States Small Business | ) |
| Administration, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT

Plaintiff The Converse County Bank ("CCB"), by and through its undersigned counsel, brings this action for declaratory judgment and injunctive relief against defendants the United States Small Business Administration and Isabel Casillas Guzman, solely as the Administrator of the United States Small Business Administration (together the "SBA" or "Defendants"), and allege as follows:

## INTRODUCTION

1.    This is an action under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* and section 525 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. § 525, seeking: (i) a declaratory judgment that the SBA's implementation of the Paycheck Protection Program

1

("PPP") is discriminatory against borrowers who are debtors in bankruptcy; (ii) to set aside, as beyond the SBA's statutory authority and as arbitration and capricious: (a) the SBA's denial of guaranty purchase of a PPP loan CCB made to Mountain States Rosen ("MSR" or "Borrower") and (b) the SBA's rule disqualifying bankruptcy debtors from eligibility for PPP loans; and (iii) an order enjoining the SBA from denying guaranty repurchase of the PPP loan made to MSR based on MSR's status as a bankruptcy debtor.

## PARTIES

2.      Plaintiff The Converse County Bank is an FDIC-insured banking corporation with its headquarters in Douglas, Wyoming.

3.      Defendant the SBA is an agency of the United States of America. Its central office is located at 409 Third Street, S.W., Washington D.C. 20416.

4.      Defendant Isabel Casillas Guzman is the Administrator of the SBA.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1346 and 5 U.S.C. §§ 702-03.

6.      This Court has the authority to grant the relief requested herein under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201-02.

7.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (e)(1). A substantial part of the events giving rise to this claim occurred and will continue to occur in this district, plaintiff resides in this district, and the defendant is an agency of the United States.

## FACTUAL BACKGROUND

8.      The SBA was created by the Small Business Act, 15 U.S.C. § 631 *et seq*. SBA's purpose, as declared by Congress, is to aid, counsel, assist and protect the interests of American

small businesses. To that end, SBA administers loan programs that issue loans guaranteed by the Federal government to eligible small businesses.

9.    On March 19, 2020, before the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law, MSR filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Wyoming.

10.    MSR was a premium lamb processing, harvesting and fabricating company located in Greeley, Colorado. MSR employed approximately 230 people. As of the Petition Date, MSR's fabrication plant, which was operating at 50% of the facility's capacity, was the largest lamb meat fabrication plant in the United States.

11.    On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in response to the economic effects of the COVID-19 pandemic. The CARES Act amended part of the Small Business Act to establish the PPP: "a temporary [] loan program designed to provide emergency assistance to qualifying small businesses during the COVID-19 crisis." (Pub. L. 116-36, Title VIII, 134 Stat. 281, 563 (2020)). The emergency assistance was needed to address the unprecedented impact on the U.S. economy caused by the pandemic, which included bare shelves at grocery stores, severely disrupted global supply chains, stay-at-home orders and mandatory quarantines issued by various state and territory governments. The CARES Act would distribute approximately $2.3 trillion.[1]

12.    PPP loans were forgivable if the recipient used the funds for certain designated purposes like payroll costs, mortgage and rent obligations, and utilities. Neither the SBA nor PPP lenders charged any fees for a PPP loan. Borrowers did not have to give collateral or personal

---

[1] *See, e.g.,* Federal Reserve takes additional actions to provide up to $2.3 trillion in loans to support the economy, Board of Governors of the Federal Reserve, April 9, 2020, *available at* https://www.federalreserve.gov/newsevents/pressreleases/monetary20200409a.htm.

guarantees to receive a PPP loan. PPP loans had extremely favorable terms for borrowers, specifically 2-year maturity and 1% interest rates. About $350 billion was paid out in forgivable loans to small businesses to subsidize their payrolls during the disruption of the pandemic. The government did not have the mechanisms to deploy this amount of money into the economy, so it relied on banks and other lending institutions to administer the program.

13.    The CARES Act granted the SBA "emergency rulemaking authority and required the SBA to issue regulations to carry out the [CARES] Act without regard to the notice requirements set forth in the Administrative Procedures Act (APA), 5 U.S.C. § 553(b)."

14.    On March 31, 2020, MSR sought to obtain a PPP loan from CCB in the principal amount of $3,595,000.

15.    On April 2, 2020, the SBA issued an interim final rule (the "First Interim Rule"), which provided guidance as to PPP loan eligibility.

16.    The First Interim Rule adopted the ineligibility standards of section 120.110, title 13 of the Code of Federal Regulations ("CFR 120.110"), as set forth in the SBA's Standard Operating Procedure 50-10, Subpart B, Chapter 2 ("SOP 50-10"). SOP 50-10 provides that an applicant must be an operating business, located in the United States and "small" as defined by the SBA. The applicant also must demonstrate a need for the credit.

17.    CFR 120.110 provides a list of ineligible businesses. Bankruptcy debtors are not on that list. And nothing in SOP 50-10 made bankruptcy debtors ineligible.

18.    On April 4, 2020, the SBA issued a supplemental interim final rule (the "Second Interim Rule") providing additional guidance on PPP eligibility. The Second Interim Rule, like the First Interim Rule, did not make bankruptcy debtors ineligible.

19.     However, the PPP application form issued by the SBA on April 2, 2020, purported to disqualify bankruptcy debtors from PPP participation.

20.     Consequently, when MSR applied to CCB for a PPP loan, MSR was eligible to receive a PPP loan but for the risk of ineligibility associated with MSR being a bankruptcy debtor.

21.     CCB informed MSR that CCB would not process the PPP loan without MSR obtaining guidance from Wyoming Senator Mike Enzi or other policymakers that MSR would be eligible for PPP funding.

22.     On April 8, 2020, MSR informed CCB that Senator Enzi told MSR that he had spoken with the SBA Administrator, who gave him assurances that MSR would be eligible to receive PPP loans.

23.     On April 9, 2020, MSR submitted a PPP application form to CCB.

24.     That same day, CCB reviewed and compared the requested loan amount and employees to a payroll spreadsheet calculation that MSR provided.

25.     Question 1 on the application form, relating to whether the applicant was currently in bankruptcy, was unchecked.

26.     On April 14, 2020, CCB submitted the application form on behalf of MSR through E-Tran, the SBA's online document portal. CCB answered "yes" to the question in E-Tran asking if the applicant was in bankruptcy.

27.     Later that day, the SBA approved the PPP loan and issued an SBA loan number for the loan. Like all PPP loans, the SBA guaranteed to pay "100% of the outstanding balance [of the loan], and that guarantee is backed by the full faith and credit of the United States." *See* Paycheck Protection     Program     (PPP)     Information     Sheet     -     Lenders,     available     at https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.p

5

df, last accessed February 23, 2024. For loans to eligible borrowers, which MSR was, that guarantee had no conditions, loopholes or footnotes.

28.     On April 15, 2020, CCB prepared a note in the amount of $3,595,000 and on April 17, 2020, SBA authorized CCB to fund the loan with CCB's own deposits. From April 21 through April 24, 2020, CCB wired out portions of the loan proceeds at MSR's direction, for approved PPP purposes.

29.     On April 21, 2020, MSR filed in the bankruptcy action a Motion to Obtain Post-Petition Unsecured Credit Under the Coronavirus Aid, Relief, and Economic Security Act Paycheck Protection Program, seeking the bankruptcy court's permission to obtain the PPP loan from CCB (the "Motion").

30.     On April 28, 2020, weeks after SBA approved the loan, and the same day President Trump ordered meat processing facilities to remain open during the pandemic, SBA issued another supplemental interim final rule ("Fourth Interim Rule"), which purported to render bankruptcy debtors ineligible to receive PPP loans.

31.     Nothing in the Small Business Act, SBA Regulations or the CARES Act authorized or permitted the SBA to exclude bankruptcy debtors from the PPP.

32.     Meanwhile, on May 5, 2020, CCB filed a response to the Motion indicating that MSR had confirmed that Senator Enzi had spoken to the SBA and received assurances that MSR would be eligible for PPP loans.

33.     The SBA did not file an objection or appear at the hearing despite, upon information and belief, being aware of the Motion.

34.     On May 14, 2020, the bankruptcy court granted the Motion.

35.    MSR used the PPP loan proceeds to satisfy payroll and other obligations as authorized under the CARES Act.

36.    On July 23, 2020, MSR sought loan forgiveness from the SBA.

37.    While the forgiveness application was pending, on November 20, 2020, the bankruptcy court granted MSR's motion to convert its case from Chapter 11 to Chapter 7 bankruptcy.  That Chapter 7 proceeding remains pending.

38.    On September 1, 2021, the SBA denied loan forgiveness based solely on MSR's alleged "ineligibility" as a bankruptcy debtor.

39.    On September 30, 2021, the Chapter 7 Trustee appealed the SBA's denial to the SBA Office of Hearings and Appeals ("OHA").

40.    The SBA moved to dismiss the appeal because it was re-reviewing MSR's eligibility.  OHA dismissed the appeal.

41.    On January 20, 2023, the SBA issued a second decision denying loan forgiveness, on the grounds that MSR: (i) allegedly was ineligible to receive the loan because MSR was in bankruptcy; (ii) allegedly improperly used an affiliate's payroll for the loan size and forgiveness amount requested; and (iii) MSR's covered period allegedly continued through a date after which MSR's employees were terminated as a result of a sale of MSR's assets in bankruptcy.

42.    On February 21, 2023, the Chapter 7 Trustee (the "Trustee") appealed the second denial with the OHA.

43.    On or about April 24, 2023, CCB submitted a guaranty purchase request to the SBA through the SBA's forgiveness platform.

44.    On June 9, 2023, the OHA affirmed the SBA's second denial of loan forgiveness on all grounds.

7

45. On July 7, 2023, the Trustee appealed the OHA's decision affirming the second denial of loan forgiveness to the United States District Court for the District of Wyoming. That action is pending.

46. On or around August 25, 2023, the SBA apparently issued a letter denying CCB's guaranty purchase request; however, this letter was not served on CCB.

47. The SBA denied guaranty purchase primarily on the grounds that MSR was ineligible for a PPP loan because it was a bankruptcy debtor when it applied for the loan. The SBA also denied guaranty purchase on the grounds that: (i) MSR did not complete Question 1 of Form 2483 answering whether it was presently in bankruptcy and CCB's Form 2484 checked a box certifying that MSR was not in bankruptcy and (ii) the loan application materials allegedly contained insufficient documentation of MSR's payroll because the submitted documentation pertained to an affiliate.

48. However, as alleged above, on April 14, 2020, when CCB submitted the PPP loan application through E-Tran, CCB checked "yes" to the question of whether MSR was "involved in Bankruptcy/insolvency." The SBA approved the loan the same day and did not raise the issue of MSR's purported ineligibility based on its being a debtor in bankruptcy until MSR sought loan forgiveness.

49. Moreover, MSR's loan application materials were not insufficient.

50. The SBA determined that the loan application materials were insufficient because the SBA improperly discounted certain Form 941s for Q1-Q4 of 2019 that MSR submitted to CCB in support of the payroll cost calculation. The SBA discounted those documents because they relate to an affiliate of MSR called Rosen of Colorado, Inc. ("Rosen"). Because MSR and Rosen

have different EINs, the SBA determined that Rosen's employees' wages could not be used to calculate MSR monthly payroll cost.

51.     However, Rosen was a single-purpose, captive entity that existed solely to employ the individuals who provided labor for MSR.  Rosen had no independent operational or business function.  Moreover, and importantly, MSR exclusively funded Rosen's payroll obligations before and during the relevant PPP loan period.  MSR's ability to continue paying those payroll obligations was essential to maintaining its business during the pandemic, making MSR a perfect candidate for a PPP loan.

52.     Moreover, SBA's Paycheck Protection Program Loans Frequently Asked Questions confirms that SBA counts money paid by borrowers to third-party payers for the third-party payer's employees to operate the borrower as eligible payroll expenses for purposes of calculating maximum loan amount.

53.     Specifically, FAQ 72 asks:

"Are the amounts paid by a borrower to a third-party payer for the third-party payer's employees to operate the borrower considered eligible payroll expenses for the purpose of calculating the maximum loan amount?"

54.     In its answer, the SBA clarified its response to FAQ 10 and stated that:

"payroll costs paid by a borrower to a third-party payer for the third-party's employees to operate the borrower are eligible payroll costs for the purpose of calculating the borrower's maximum loan amount, as long as the employees were not otherwise counted towards payroll costs on a PPP loan received by the third-party payer.  This clarification is consistent with the purpose of the PPP to cover payroll expenses and keep workers employed during the COVID pandemic. ... **As a result, payroll cost documentation which shows that a borrower paid a third-party payer for the employees of the third-party to operate the borrower will be permitted to support eligible payroll costs for the purpose of calculating the maximum loan amount as long as the employees**

9

> were not otherwise counted towards payroll costs on another PPP loan."

> SBA FAQ 72 (Paycheck Protection Program Loans Frequently Asked Questions (FAQs) (sba.gov))

55. Because MSR and Rosen are affiliates, because Rosen's employees are MSR's employees, and because Rosen employees were not counted towards payroll costs on a PPP loan received by Rosen, it was appropriate and sufficient for CCB and MSR to rely on Rosen's employment records in calculating the loan value.

56. MSR is a business that Congress intended to benefit from the PPP when it passed the CARES Act.

## CLAIMS

## COUNT I

**Agency action that is not in accordance with law
and is in excess of authority, in violation of the APA**

57. Plaintiff repeats and incorporates by reference all the allegations in the preceding paragraphs as if set forth fully herein.

58. Under the APA, courts must "hold unlawful and set aside" agency actions that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

59. Defendants may only exercise authority delegated to them by Congress.

60. Congress has declared that the SBA's purpose is to aid, counsel, assist and protect the interests of American small businesses.

61. Nothing in the Small Business Act, CARES Act, SBA Regulations, SOP 50-10 or the First or Second Interim Rules authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

62. By issuing the Fourth Interim Rule excluding bankruptcy debtors from the PPP, Defendants implemented the PPP in an unlawful manner and exceeded their statutory authority.

63. Moreover, by denying CCB's guarantee purchase request on the basis of MSR's status as a debtor in bankruptcy, Defendants took a final agency action that exceed their statutory authority.

64. Defendants' implementation of the PPP in a manner that causes bankruptcy debtors to be ineligible, and Defendants' denial of guarantee repurchase on that basis, are consequently "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA.

65. The SBA's issuance of the Fourth Interim Rule and its denial of guarantee purchase are final determinations. CCB has no administrative appeals or remedies available to seek review of these final agency actions.

66. Defendants' violations of the APA cause ongoing and irreparable harm to CCB.

67. CCB is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes bankruptcy debtors to be ineligible, and Defendants' denial of guarantee repurchase on that ground, are violative of the APA and that Defendants have unlawfully exceeded their authority by taking these final agency actions.

68. CCB is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying guarantee repurchase of the PPP loan based on MSR's status as a Chapter 11 debtor.

69. CCB is likely to succeed on the merits of these claims against Defendants.

11

70.   MSR is in Chapter 7 bankruptcy and unlikely to have sufficient funds to repay the loan. CCB will suffer immediate and irreparable harm as a consequence of Defendants' unlawful agency actions.

71.   The balance of hardships and equities weighs in favor of issuing an injunction, and CCB has no adequate remedy at law.

## COUNT II

### Arbitrary and capricious agency action in violation of the APA

72.   Plaintiff repeats and incorporates by reference all the allegations in the preceding paragraphs as if set forth fully herein.

73.   Under the APA, courts must set aside agency actions that are "arbitrary, capricious, [or] an abuse of discretion."  5 U.S.C. § 706(2)(A).

74.   Congress has declared that the SBA's purpose is to aid, counsel, assist and protect the interests of American small businesses.

75.   Nothing in the Small Business Act, CARES Act, SBA Regulations, SOP 50-10 or the First or Second Interim Rules authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

76.   By issuing the Fourth Interim Rule excluding bankruptcy debtors from the PPP, Defendants implemented the PPP in an unlawful manner that was arbitrary, capricious and/or an abuse of discretion.

77.   Moreover, by denying CCB's guarantee purchase request on the basis of MSR's status as a debtor in bankruptcy, Defendants took a final agency action that was arbitrary, capricious and/or an abuse of discretion.

12

78.     Defendants' implementation of the PPP in a manner that causes bankruptcy debtors to be ineligible, and Defendants' denial of guarantee repurchase on that basis, are consequently "arbitrary, capricious, [and] an abuse of discretion," in violation of the APA.

79.     Defendants' denial of guarantee purchase on the grounds that MSR did not complete Question 1 of Form 2483 answering whether it was in bankruptcy also was arbitrary, capricious and an abuse of discretion.

80.     CCB put the SBA on notice of MSR's bankruptcy on April 14, 2020, when CCB submitted the PPP loan application through E-Tran.  At that time, CCB checked "yes" to the question of whether MSR was "involved in Bankruptcy/insolvency."  The SBA approved the loan the same day and did not raise the issue of MSR's purported ineligibility based on its being a debtor in bankruptcy until MSR sought loan forgiveness.

81.     Consequently, the SBA knew before approving the loan of MSR's being a debtor in bankruptcy and still approved the loan.  It is arbitrary, capricious and an abuse of discretion to rule MSR ineligible for the loan after approving it with that knowledge.

82.     Defendants' denial of guarantee purchase on the grounds that MSR's loan application materials were insufficient also was arbitrary, capricious and an abuse of discretion.

83.     In making that determination, the SBA improperly discounted certain Form 941s for Q1-Q4 of 2019 that MSR submitted to CCB in support of the payroll cost calculation.

84.     The SBA discounted those documents because they relate to an affiliate of MSR called Rosen of Colorado, Inc. ("Rosen").  Because MSR and Rosen have different EINs, the SBA determined that Rosen's employees' wages could not be used to calculate MSR monthly payroll cost.

13

85.     However, Rosen was a single-purpose, captive entity that existed solely to employ people who provided labor for MSR.  Rosen had no independent operational or business function. Critically, MSR exclusively funded Rosen's payroll obligations before and during the relevant PPP loan period.  Consequently, MSR's ability to continue paying those payroll obligations was essential to maintaining its business during the pandemic, making MSR a perfect candidate for a PPP loan.

86.     Moreover, SBA's decision is arbitrary and capricious because it directly contradicts SBA's own guidance set forth in FAQ 72, in which SBA states "payroll cost documentation which shows that a borrower paid a third-party payer for the employees of the third-party to operate the borrower **will be permitted to support eligible payroll costs for the purpose of calculating the maximum loan amount** as long as the employees were not otherwise counted towards payroll costs on another PPP loan."

87.     Because MSR and Rosen are affiliates, because Rosen's employees are MSR's employees, and because Rosen did not receive any PPP loans, it was appropriate and sufficient for CCB and MSR to rely on Rosen's employment records in calculating the loan value.

88.     The SBA's issuance of the Fourth Interim Rule and its denial of guarantee purchase are final determinations.  CCB has no administrative appeals or remedies available to seek review of these final agency actions.

89.     Defendants' violations of the APA cause ongoing and irreparable harm to CCB.

90.     CCB is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes bankruptcy debtors to be ineligible, and Defendants' denial of guarantee repurchase on that ground, are violative of the APA because they are arbitrary, capricious or an abuse of discretion.

14

91.    CCB is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying guarantee repurchase of the PPP loan based on MSR's status as a Chapter 11 debtor.

92.    CCB is likely to succeed on the merits of these claims against Defendants.

93.    MSR is a debtor in Chapter 7 bankruptcy and unlikely to have sufficient funds to repay the loan. CCB will suffer immediate and irreparable harm as a consequence of Defendants' unlawful agency actions.

94.    The balance of hardships and equities weighs in favor of issuing an injunction, and CCB has no adequate remedy at law.

## COUNT III

### Violation of 11 U.S.C. § 525 – Discrimination Against Bankruptcy Debtors

95.    Plaintiff repeats and incorporates by reference all the allegations in the preceding paragraphs as if set forth fully herein.

96.    Section 525(a) of the Bankruptcy Code provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to . . . a person that is or has been a debtor under this title." 11 U.S.C. § 525(a). This list is not exhaustive.

97.    Congress intended the PPP to provide relief to small businesses impacted by COVID-19.

98.    By issuing the Interim Fourth Rule and denying guarantee repurchase on the basis of MSR's status as a bankruptcy debtor, Defendants are denying bankruptcy debtors the benefits provided by the PPP to similarly situated, non-bankruptcy debtor businesses.

15

99.    The PPP was enacted to provide relief to struggling small businesses without regard to their creditworthiness, making Defendants' decision to exclude bankruptcy debtors from the PPP unreasonable.

100.    But for the ineligibility of bankruptcy debtors, MSR was otherwise eligible for the PPP loan.

101.    Consequently, Defendants' decisions to exclude bankruptcy debtors from the PPP, and deny guarantee repurchase on that basis, interfere with MSR's ability to obtain a "fresh start," which is the purpose of bankruptcy. These actions, therefore, as discriminatory against bankruptcy debtors in violation of Section 525(a) of the Code.

102.    Defendants' violations cause ongoing and irreparable harm to CCB.

103.    CCB is entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes bankruptcy debtors to be ineligible, and Defendants' denial of guarantee repurchase on that basis, are unlawful and discriminatory against bankruptcy debtors in violation of Section 525(a) of the Code.

104.    CCB is entitled to preliminary and permanent injunctive relief enjoining Defendants from denying guarantee repurchase of the PPP loan based on MSR's status as a Chapter 11 debtor.

105.    CCB is likely to succeed on the merits of these claims against Defendants.

106.    MSR is a debtor in Chapter 7 bankruptcy and unlikely to have sufficient funds to repay the loan. CCB will suffer immediate and irreparable harm as a consequence of Defendants' unlawful actions.

107.    The balance of hardships and equities weighs in favor of issuing an injunction, and CCB has no adequate remedy at law.

16

## COUNT IV

### Declaratory Judgment

108.  Plaintiff repeats and incorporates by reference all the allegations in the preceding paragraphs as if set forth fully herein.

109.  For the reasons described in Counts I, II and III, Plaintiff is entitled to a declaratory judgment that Defendants have violated the law.

110.  Moreover, Plaintiff is entitled to a writ of mandamus under 28 U.S.C. § 1361 compelling Defendants to remove its disqualification of bankruptcy debtors as businesses eligible to receive PPP loans because Defendants acted beyond their statutory authority in implementing that disqualifying factor.

### PRAYER FOR RELIEF

For these reasons, Plaintiff asks the Court to:

a)  Hold unlawful and set aside the Fourth Interim Rule and guarantee purchase denial;

b)  Issue preliminary and permanent injunctions enjoining Defendants from enforcing the Fourth Interim Rule and guarantee purchase denial;

c)  Issue declaratory relief that Defendants' actions are unlawful because they: (i) exceed the scope of Defendants' authority; (ii) are arbitrary, capricious and an abuse of discretion; and (iii) unlawfully discriminate against bankruptcy debtors in violation of Section 525(a) of the Code;

d)  Award Plaintiff costs and reasonable attorney's fees;

e)  Award such other relief as the Court deems equitable and just.

March 5, 2024

By: _____

BAILEY | STOCK | HARMON | COTTAM | LOPEZ LLP

Dale W. Cottam, Esq. WSB No. 6-2719
Ronald J Lopez, Esq. WSB No. 7-4697
6234 Yellowstone Road
Cheyenne, WY 82003
307-222-4932
dale@performance-law.com
ronnie@performance-law.com

LOCKE LORD LLP

Bradley C. Knapp, Esq. (pro hac vice forthcoming)
601 Poydras Street, Suite 2660
New Orleans, LA 70130
504-558-5100

Jeffrey S. Kramer, Esq. (pro hac vice forthcoming)
Brookfield Place, 200 Vesey Street
20th Floor
New York, NY  10281-2101
212-415-8600

Meagan S. Tom, Esq. (pro hac vice forthcoming)
101 Montgomery Street, Suite 1950
San Francisco, CA 94104
415-318-8816

STATE OF *Wyoming* )
                              )
COUNTY OF *Converse* )

## VERIFICATION

Michael Marso verifies as follows:

I am the Chief Financial Officer for Converse County Bank ("CCB"). I am duly qualified and authorized in all respects to make this verification. I have read the foregoing Verified Complaint and hereby verify that the factual allegations therein are true and correct, except to the extent alleged on information and belief, in which case I believe them to be true. I make this verification based on my personal knowledge and my review of business records maintained by CCB, various court filings and other documents referenced in the Verified Complaint.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on ___*7/23/2024*___ .                    _____

        Subscribed and sworn to before me this *23* day of February 2024. My commission expires on ___*7.11.2029*___ .

SEAL.

                                        _____
                                        Notary Public

M. CORNELIO
Notary Public - State of Wyoming
Commission ID 148382
My Commission Expires JULY 11, 2029

19

136285626v.4