**BRIAN M. BOYNTON**
Principal Deputy Assistant Attorney General

**ERIC HEIMANN**
Acting United States Attorney

**JEREMY A. GROSS** (WY Bar #7-5110)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
307-772-2124
jeremy.gross@usdoj.gov

**THOMAS W. PORTS, JR.**
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Corporate Financial/Litigation Section
P.O. Box 875
Ben Franklin Station
Washington, DC 20044-0875
202-307-1105
thomas.ports@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE CONVERSE COUNTY BANK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) No. 24:cv-54-ABJ |
| UNITED STATES SMALL BUSINESS | ) |
| ADMINISTRATION and ISABEL CASILLAS | ) |
| GUZMAN in her official capacity as Administrator | ) |
| of the United States Small Business Administration, | ) |
| | ) |
| Respondents. | ) |
| | ) |

### RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION
### TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD

## I.        Introduction

Converse County Bank (the Bank) "approv[ed] [a] loan application to the SBA subject to the terms and conditions stated in the application," AR00753, even though the Bank knew that the borrower, Mountain States Rosen (MSR), was in bankruptcy and even though a condition of the application was that borrowers in bankruptcy were ineligible for Paycheck Protection Program (PPP) loans. The Bank also approved MSR's calculation of its roughly $3.6 million loan without documentation that MSR made payroll payments for an affiliate's employees during the calculation period. Under the PPP, SBA-approved lenders like the Bank were responsible for reviewing loan applications, confirming the applications were complete, verifying the loan amount was justified by the borrower's payroll, and approving eligible applications. 15 U.S.C. § 636(36)(F)(ii)(I); 85 Fed. Reg. 20,815. When the Bank approved MSR's loan, the Bank certified that it was "aware that SBA will not review eligibility prior to issuing a loan number" and that the "SBA may deny liability on its guaranty" if a loan was ineligible. AR00753.

Despite approving a loan for an ineligible borrower, in an amount that was calculated based on alleged payroll costs that the borrower had not documented that it paid, the Bank sued for judicial review after the SBA allegedly denied guaranty purchase of the MSR loan. After the SBA filed the administrate record, the Bank moved to (1) complete the record for the Fourth Interim Final Rule (Fourth IFR), (2) supplement the record with SBA's response to a Frequently Asked Question (FAQ), and (3) supplement the record with a user guide for 504 loans.

The Court should deny the Bank's motion to complete the record for the Fourth IFR because the discussion of the bankruptcy exclusion in that IFR is, itself, simply explanation of the First Interim Final Rule's (First IFR) exclusion of debtors in bankruptcy from obtaining PPP loans. The Fourth IFR is not the type of final agency action for which a record should be compiled. Indeed, the Bank's claim will be dismissed for lack of jurisdiction since final agency

1

action is necessary to waive sovereign immunity under the Administrative Procedure Act (APA) and because the Bank lacks standing to challenge the Fourth IFR. Moreover, as explained by the June 5, 2020 declaration of an SBA official attached as Exhibit A, SBA has no record to submit for the Fourth IFR beyond the testimony in the declaration. The SBA does not object to supplementing the administrative record with the June 5, 2020 declaration.

The Court should deny the Bank's motion to supplement the record with SBA FAQ 72 because that FAQ is irrelevant. That FAQ says that, in calculating a PPP loan amount, if there is documentation that a borrower paid a third party for employee payroll then the third party's records can be submitted. Here, there is no documentation that the borrower paid another party for employee payroll during the time period used to calculate the loan amount.

The Court should deny the Bank's motion to supplement the record with the user guide for 504 loan applications because that user guide is irrelevant. The 504 user guide only explains the application process for section 504 loans, which process is completely different from the PPP loan application and approval process. The record contains screenshots of the PPP loan submissions in this case and the parties agree on how and when the submissions occurred.

## II.      Factual and Procedural Background

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, Title VIII, 134 Stat. 281, 563 (2020). The CARES Act amended section 7(a) of the Small Business Act, 15 U.S.C. § 636, to establish the PPP, a temporary section 7(a) loan program designed to provide emergency assistance to qualifying small businesses. The Act delegated the approval of loans to SBA-approved lenders. 15 U.S.C. § 636(36)(F)(ii)(I). The SBA required lenders to (1) confirm receipt of borrower certifications in the SBA Form 2483 (the Borrower Application Form), (2) confirm the lender received information demonstrating that the borrower had employees for whom the

2

borrower paid salaries and payroll taxes, and (3) confirm the dollar amount of the average monthly payroll costs that the borrower paid the preceding calendar year. 85 Fed. Reg. 20,815. If the borrower used loan funds for qualified payroll or other expenses, eligible borrowers could receive forgiveness. *See* 15 U.S.C. § 636m; *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1247 (11th Cir. 2020). Not all permitted uses of funds were forgivable. *See id.* The CARES Act permits only eligible borrowers to receive loan forgiveness. CARES Act § 1106, 134 Stat. at 563. The SBA must deny forgiveness to any borrower that is ineligible. 85 Fed. Reg. 33,005; 33,012.

The CARES Act gave the SBA emergency rulemaking authority and required the SBA to issue regulations in fifteen days to carry out the Act, without regard to the notice requirements in the APA, 5 U.S.C. § 553(b). CARES Act § 1114, 134 Stat. at 312. The SBA set eligibility requirements for PPP loans through Interim Final Rules, which carry the force and effect of law. *See* 5 U.S.C. § 553. When the Bank approved the loan at issue, the SBA had promulgated the First IFR and the Borrower Application Form. 85 Fed. Reg. 20,815.

From the start, the SBA excluded debtors in bankruptcy from participating in the PPP. This exclusion was explicit on the Borrower Application Form, which accompanied the SBA's promulgation of the First IFR. 85 Fed. Reg. 20,815; *see Gateway*, 983 F.3d at 1249 (explaining that the SBA articulated the bankruptcy exclusion through the Borrower Application Form, promulgated under the First Interim Final Rule). The first question on the Borrower Application Form asks: "Is the Applicant. . . presently involved in any bankruptcy?" and states unequivocally that a potential borrower who answers affirmatively is not eligible to receive a PPP loan. AR01177 (Blank Borrower Application Form).

Many debtors in bankruptcy wanted PPP loans, but banks prudently refused to issue loans to ineligible applicants. *See, e.g.*, *In re Vestavia Hills, Ltd U.S. Small Bus. Admin.*, No. 20-CV-01308-GPC-LL, 2021 WL 1165038, at *2 (S.D. Cal. Mar. 26, 2021) (noting refusal). Most would-be applicants thus challenged the bankruptcy exclusion in their bankruptcy cases or in District Court. *See, e.g.*, *id.*; *Tradeways, Ltd. v. United States Dep't of the Treasury*, No. CV ELH-20-1324, 2020 WL 3447767, at *6 (D. Md. June 24, 2020). Neither the Bank nor MSR sought to challenge the bankruptcy exclusion before the Bank approved and issued the loan here.

Instead of seeking to challenge the exclusion before approving and extending the loan, the Bank issued MSR a PPP loan despite MSR's ineligibility. On April 12, 2020 MSR submitted a Borrower Application Form to the Bank. AR00007 (MSR's Borrower Application Form). MSR did not complete the form and left blank the first question that asked whether MSR was in bankruptcy. *Id.* The Bank completed an SBA Form 2484 (the Lender Application Form), which "collect[s] identifying information about the lender, the applicant, the loan guaranty request, sources and uses of funds, the proposed structure (which includes pricing and the loan term), and compliance with SBA Loan Program Requirements." AR00276. In filling out the Lender Application Form, the Bank wrongly said that MSR had certified to the Bank that MSR was not "presently involved in any bankruptcy." AR00277. Like the Borrower Application Form, the Lender Application Form states if an applicant is in bankruptcy then "the loan cannot be approved." *Id.* The Bank first submitted its Lender Application Form to the SBA with MSR's request for loan forgiveness.

When the Bank approved MSR's PPP application to the SBA through SBA's ETRAN system, the Bank certified that the Bank was "aware that SBA will not review eligibility prior to issuing a loan number and that if an SBA loan number is assigned and SBA later learns that the

4

loan is not eligible, SBA may deny liability on its guaranty." AR00753. The Bank nonetheless "approv[ed] the loan application to the SBA subject to the terms and conditions stated in the application." *Id.* Even while making these certifications, the Bank acknowledged in its approval submission that MSR was in bankruptcy, thus making MSR ineligible under the conditions of the application. Upon submission, the system automatically generated a loan number.

From April 21 through April 24, 2020, the Bank disbursed the funds to MSR. On or about April 24, 2023 the Bank requested guaranty purchase of the loan. *See* AR01175.

On March 6, 2024 the Bank filed this suit seeking judicial review of SBA's alleged denial of the Bank's demand that SBA purchase the guaranty. *See* ECF No. 1. The SBA filed the administrative record on October 9, 2024. ECF No. 20. On October 30, 2024, the parties met and conferred about the administrative record. The Bank made the same three requests that the Bank makes in this motion. The SBA offered to add to the record the June 5, 2020 declaration that is attached to this Opposition as Exhibit A, and offered to stipulate to the dates on which the Bank made certain submissions through ETRAN. The Bank refused SBA's offers and filed the Motion to Complete and Supplement (the Motion). ECF No. 24.

## III.    Legal Standard

In the Tenth Circuit, "[r]eviews of agency action in the district courts [under the APA] must be processed *as appeals*." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light v. Lorion*, 470 U.S. 729, 743-44 (1985).

"[A] court may not rely on evidence outside the Administrative Record absent extraordinary circumstances." *Am. Wild Horse Pres. Campaign v. Zinke*, No. 17-CV-170-F, 2018 WL 9869243, at *2 (D. Wyo. May 3, 2018) (citing *Am. Mining Cong. v. Thomas*, 772 F.2d 617,

626 (10th Cir. 1985) ("any exception to this general rule against the use of extra-record material must be extremely limited."); U.S.D.C.L.R. Rule 83.6(b)(3) ("Extra-record evidence which was not considered by the agency will not be permitted except in extraordinary circumstances.")), *reconsideration denied*, No. 17-CV-170-F, 2018 WL 9874029 (D. Wyo. June 28, 2018). The Tenth Circuit has summarized those "extremely limited" situations as follows:

> (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong.

*Am. Mining Cong.*, 772 F.2d at 626 (internal citations omitted).

## IV.    Argument

### A.    The Court should deny the motion to complete the record for the Fourth IFR.

The Bank's motion to complete the record for the Fourth IFR should be denied because the Fourth IFR is, itself, a "specific explanation" of the bankruptcy exclusion, *In re Vestavia Hills, Ltd.*, 2021 WL 1165038, at *15; it is not a final agency action for which a record should be compiled. Indeed, the Bank's purported APA challenge will fail for lack of jurisdiction. Equally important, there is no further record for the Fourth IFR. *See* Ex. A. The SBA offered to add to the record a June 5, 2020 declaration and, although the SBA believes the Bank's Motion should be denied, the SBA does not object to adding that declaration to the record.

There can be no record for the Fourth IFR because the Fourth IFR is not a final agency action. "An agency action is final if: "(1) it 'mark[s] the consummation of the agency's decisionmaking process' . . . and (2) it is an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Kansas ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1031 (10th Cir. 2017) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The

Fourth IFR fails the second prong because the bankruptcy exclusion was effective before the SBA published the Fourth IFR. *See id.* The Fourth IFR merely explained the basis for the bankruptcy exclusion. *E.g.*, *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 411 (2d Cir. 2022) (explaining that the First IFR created the Borrower Application Form making debtors ineligible and the Fourth IFR "clarifie[d]" this exclusion); *U.S. Small Bus. Admin. v. Weather King Heating & Air, Inc.*, 648 B.R. 200, 221-22 (N.D. Ohio 2023) (rejecting debtor's argument that exclusion was retroactively applied because "[t]he bankruptcy exclusion had been in place since the First IFR"); *Tradeways, Ltd.*, 2020 WL 3447767, at *5 (explaining that the Fourth IFR provided reasoning for the bankruptcy exclusion in the First IFR).

Moreover, the Bank is incorrect when it asserts that "[t]he Court cannot evaluate [the Bank's] claim seeking to set aside [the Fourth IFR] without a record of that rule," because the Bank's claim will fail for lack of jurisdiction. First, for the reasons explained above, the Fourth IFR is not a final agency action because it did not determine rights or obligations and because no legal consequences flowed from it. *Kansas ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1031 (10th Cir. 2017). Without a final agency action, there is no waiver of sovereign immunity under the APA and no jurisdiction. *Id.* at 1028. Second, even if the Fourth IFR were a challengeable action, the Bank would lack standing to do so because the Fourth IFR was published after the Bank extended the loan to MSR, the Fourth IFR was never applied to the Bank nor cited as a basis to deny loan guarantee, and it could never apply to the Bank in the future because the PPP program has ended. *See Defs. of Wildlife v. Everson*, 984 F.3d 918, 945–46 (10th Cir. 2020) (holding plaintiff lacked standing to challenge a program because it had expired). Pursuant to the schedule established by the District's Local Rules, the SBA intends to make these jurisdictional arguments, along with other arguments, in its merits brief.

Regardless, the June 5, 2020 declaration attached as Exhibit A confirms that "the record contains 'all documents and materials directly or indirectly considered by the agency'" when the SBA published the Fourth IFR. Mot., ECF No. 24 at 6 (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993)). The SBA official testifies that "[t]here is no Administrative Record other than as noted above [for the Fourth IFR] because this was an Interim Final Rule, prepared in order to help deliver this much needed assistance to small businesses as expeditiously as possible." Ex. A ¶ 23. The SBA provided the declaration to the Bank, but the Bank does not address it. *See* ECF No. 24. Courts, however, have recognized that "[i]n the extraordinary circumstances surrounding the passage of the CARES Act, and the congressional directive that the Administrator get the PPP off the ground immediately to provide economic relief to struggling businesses and their employees, the lack of a perfectly contemporaneous explanation is far from troubling." *In re Penobscot Valley Hosp.*, 626 B.R. 350, 362 (Bankr. D. Me. 2021). The SBA declarant made the June 5, 2020 declaration only seven days after the SBA published the Fourth IFR in the Federal Register. *See* 85 Fed. Reg. 23,450 (April 28, 2020).

The Court should deny the Bank's Motion to complete the record for the Fourth IFR. However, the SBA does not object to adding the June 5, 2020 declaration, attached as Exhibit A, to the record. Courts have found that the declaration "appropriately supplements the administrative record." *In re Penobscot Valley Hosp.*, 626 B.R. at 362.

B.    <u>The Court should deny the Bank's request to supplement the record with FAQ 72 because there are no facts that could make it relevant here.</u>

The Bank admits that the FAQs that it seeks to add are post-decisional and are not part of the record. ECF No. 24 at 7-8. The FAQs do not meet any of the "extremely limited" and "extraordinary" circumstances where extra-record evidence is allowed.

8

The Bank focuses on FAQ 72, which is irrelevant because it explains that for calculating a loan amount a lender may provide the SBA with "payroll cost documentation which shows that *a borrower paid* a third-party payer for the employees of the third party to operate the borrower," but the Bank has not submitted such documentation. ECF No. 24-1 at 3334. (emphasis added). Despite SBA's requests, the Bank has failed to provide documentation demonstrating that MSR paid for the 2019 employee payroll expenses used to calculate MSR's loan amount, as required to support the calculation of the loan approved by the Bank. Because the Bank has not provided that documentation to SBA, FAQ 72 does not apply.

The Bank asserts that it relied on Excel files submitted by the borrower to confirm the loan amount, but those files do not fall within the scope of FAQ 72 because they are not documentation that MSR paid the expenses shown. According to the Bank's Motion, "[t]he same day" that the Bank approved MSR's PPP loan application to the SBA, the Bank "reviewed and compared the requested loan amount and employees" to the Excel files, which "related to a wholly-owned affiliate of MSR called Rosen of Colorado." ECF No. 24 at 4. Rosen is not a wholly-owned subsidiary of MSR and although the companies are affiliated by some common ownership, their ownership does not "wholly" overlap. *See* AR00319, 1157. Whatever the companies' affiliation may be, the affiliation is not documentation that MSR paid for Rosen's employees during the period relevant to the calculation of MSR's loan amount.

Because the Bank had no documentation that MSR paid for Rosen's employees in 2019, FAQ 72 does not show that the SBA erred and does not provide any helpful background.

C. The Court should deny the Bank's request to supplement the record with the 504 User Guide for Submitting Loan Applications because that guide is for a different loan program with a different process.

The Bank admits that the SBA did not consider the 504 User Guide for Submitting Loan Applications and that it is not part of the record. ECF No. 24 at 7-8. The 504 Guide does not

9

meet any of the "extremely limited" and "extraordinary" circumstances where extra-record evidence is allowed.

The 504 User Guide for Submitting Loan Applications is irrelevant because the Bank did not submit an application for a section 504 loan; Congress established the PPP as a temporary section 7(a) loan program. These programs have different requirements and different processes, and thus the 504 user guide cannot aid the Court in resolving the Bank's case.

The steps for a 504 loan do not apply to a PPP loan. As the first "step," the 504 guide explains that "Community Development Corporations (CDC) can originate 504 loans" using ETRAN. Guide at 3. The Bank is not a CDC. The PPP is not a 504 loan. After explaining how to set up an ETRAN account, the guide explains how to submit a pre-application. *Id.* at 6. ETRAN setup is not at issue and there were no pre-applications for PPP loans. All three of the screenshots in the guide are in the pre-application section. *See id.* Finally, the guide explains, among other things, that after the 504 application is submitted to the SBA, the application is sent to a Sacramento Loan Processing Center, the center assigns an application number, the application enters a processing queue, and a loan officer may ask for more information or may screen out an application. Guide at 8. None of these steps apply to PPP loans. By statute, Congress delegated the job of approving PPP loans *to the lender*; SBA could not and did not pre-review or approve PPP loans. CARES Act, 15 U.S.C. § 636(36)(F)(ii)(I); AR00753. Thus, in the screenshot from the Bank's PPP ETRAN, the Bank "approv[ed] the loan application to the SBA." AR00753.

The record as filed already contains screenshots of the PPP ETRAN system, including the Bank's entries. The Bank asserts submission timeline is unclear, but the parties appear to agree on the timeline. The record reflects what the Bank submitted and when. *See* AR01175.

## V.    Conclusion

The SBA respectfully requests that the Court deny the Bank's Motion.

10

Dated this 13th day of December 2024.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC HEIMANN
Acting United States Attorney
JEREMY A. GROSS (WY Bar #7-5110)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY  82003-0668
307-772-2124
jeremy.gross@usdoj.gov

 /s/ *Thomas W. Ports, Jr.*
**THOMAS W. PORTS, JR.**
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Corporate Financial/Litigation Section
P.O. Box 875
Ben Franklin Station, Washington DC
20044-0875
Telephone: 202-307-1105
Email: thomas.ports@usdoj.gov

*Attorney for Defendants*