**FILED**



*3:42 pm, 1/15/26*

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

---

CONVERSE COUNTY BANK,

      Plaintiff,

  vs.

UNITED STATES SMALL BUSINESS
ADMINISTRATION and ISABEL
CASILLAS GUZMAN in her official
capacity as Administrator of the United
States Small Business Administration,

      Defendants.

Case No. 24-CV-54-ABJ

---

### MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Converse County Bank's ("CCB") petition for review of the United States Small Business Administration's (the "SBA") denial of guaranty purchase of Mountain State Rosen, LLC's ("MSR") Paycheck Protection Program ("PPP") loan. The Court has reviewed CCB's opening brief, SBA's responsive brief, CCB's reply, and heard oral arguments. The Court finds that SBA's decision rejecting the guaranty purchase of Mountain States Rosen, LLC's PPP loan was not arbitrary and capricious. Additionally, the Court finds that CCB lacks standing to challenge SBA's rule excluding debtors in bankruptcy from participating in the PPP program. However, even if SBA has standing to challenge the exclusion rule, the rule was within SBA's statutory authority and is not arbitrary and capricious. For all these reasons, the Court affirms the SBA's decision.

**BACKGROUND**

## I. The CARES Act and PPP Loans

In March of 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), endeavoring to mitigate the economic harms posed by the COVID-19 pandemic. *See* Pub. L. 116–36, Title VIII, 134 Stat. 281, 563 (2020). The CARES Act included an amendment to section 7(a) of the Small Business Act, establishing the Paycheck Protection Program ("PPP"). 15 U.S.C. § 636. The PPP was a temporary loan program aimed at providing emergency assistance to qualifying small businesses. *Id*. To facilitate the sheer number of loans, loan approval was delegated to lenders approved by the SBA, such as CCB. *Id*. § 636(a)(36)(F)(ii)(I). The CARES Act provided certain eligibility standards for PPP loans, but provided SBA emergency rulemaking authority to manage the program. 5 U.S.C. § 553(b). If an eligible borrower used the PPP loan funds for qualified payroll or other approved expenses, the loans were forgivable in whole or in part. *See* 15 U.S.C. §§ 636m.

Over the month of April of 2020, the SBA developed rules to govern the PPP. On April 2, 2020, the SBA issued an interim final rule that provided guidance on the eligibility requirements for participation in the PPP, that rule was subsequently published in the Federal Register on April 15, 2020. *See* Paycheck Protection Program, 85 Fed. Reg. 20,811 (Apr. 15. 2020) [hereinafter "First Rule"]. While the First Rule did not expressly prohibit bankruptcy debtors, the First Rule referenced SBA Form 2483 (Paycheck Protection Application) and SBA From 2824 (Lender Certification Form). (*Id*. at 20814). The very first question of the PPP borrower application, Form 2838 inquired: "Is the

Applicant…presently involved in any bankruptcy?" (ECF No. 20-6 at 253 [Administrative Record ("AR") 01177]). The application clearly states that loans would not be approved if the answer to Questions (1) or (2) was "Yes." (*Id.*).

Then on April 20, 2020, the SBA issued additional eligibility requirements. 85 Fed. Reg. 21747 (Apr. 20 2020). This revision also did not expressly prohibit bankruptcy debtors. Finally, on April 28, 2020, the SBA provided a new interim final rule, which for the first time expressly prohibited bankruptcy debtors from being eligible. 85 Fed. Reg. 23450 (Apr. 28, 2020) ("Second Rule").[1] Specifically, the Second Rule provided: "If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." *Id.* at 23,451. The Second Rule also contains a rationale for the requirement: "providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or nonrepayment of unforgiven loans. In addition, the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in bankruptcy." *Id.* The Second Rule also clarifies that "the Borrower Application Form for PPP loans (SBA Form 2483), which reflects this restriction in the form of a borrower certification, is a loan program requirement." *Id.*

---

[1] There appears to be some confusion about the version of the April 28, 2020 Rule. This Rule is sometimes referred to and the "Fourth Rule." For purposes of this opinion, the original guidance from April 2, 2020, published in the federal register on April 15, 2020, is the "First Rule" and the April 28, 2020 revision is the "Second Rule."

## II. Events Giving Rise to This Action

On April 14, 2020, MSR—a lamb processing company in Greely, Colorado submitted its PPP application form on SBA Form 2483 to CCB. (AR 00007-8). However, on March 19, 2020, MSR had filed for bankruptcy in the United States Bankruptcy Court for the District of Wyoming, Case No. 20-2011. In its application, MSR left blank the first question about whether they presently involved in any bankruptcy proceeding. (AR 00007).

MSR submitted its application to CCB, who then completed SBA Form 2484. (AR 00276-78). That form required CCB to certify that "[t]he applicant has certified to the Lender that the Applicant is eligible under the Paycheck Protection Program Rules." (AR 00277). Later in the same form, CCB answered yes to the question "The applicant has certified to the Lender that neither the Applicant nor any owner is . . . presently involved in any bankruptcy." (*Id.*). However, CCB knew that MSR was currently involved in bankruptcy proceedings.

While applicants filled out SBA Form 2483, the lenders uploaded the information from the application into the SBA's E-Tran system. On April 14, 2020, CCB uploaded MSR's application through the E-Tran system for the PPP loan and the SBA issued a loan number. Even though MSR left Question 1 related to bankruptcy blank on its application, in uploading the application, CCB marked the box as yes. (AR 00007 [MSR Application]; AR 00759(2) (ECF No. 20-5 at 299) [E-Tran Application]).

To submit an application on the E-Tran system, CCB was required to certify "that the loan information pertaining to the above loan is true and correct, to the best of its knowledge, and that it has exercised due diligence to obtain true and correct information."

(AR 00753 [ECF No. 20-5 at 293]).[2] The form goes on to state "Lender is aware and acknowledges that the SBA will not review eligibility prior to issuing a loan number and that if an SBA loan number is assigned and the SBA later learns that the loan is not eligible, SBA may deny liability on its guaranty." (*Id*.). CCB disbursed the funds to MSR on April 17, 2020. (AR 01164).

In November 2020, MSR requested loan forgiveness, which CCB submitted on MSR's behalf. (AR 00751 [ECF No. 20-5 at 241]). On January 20, 2023, the SBA denied any loan forgiveness to MSR, finding that MSR used ineligible payroll for the size and forgiveness amount, that MSR was ineligible because it was in bankruptcy at the time it applied for and received the proceeds of the loan, and MSR was ineligible because it did not answer Question 1 on the Form 2483, therefore failing to complete the application process. (AR 0759 [ECF No. 20-5 at 249]). MSR appealed that decision to SBA's Office of Hearings and Appeals ("OHA"). (AR 0751 [ECF No. 20-5 at 241]). On June 9, 2023, OHA affirmed the SBE's decision, finding that MSR was ineligible for its PPP loan and was not eligible for loan forgiveness. (AR 00777 [ECF No. 20-5 at 267]).

MSR, through its bankruptcy trustee, appealed the OAH decision. *Smith v. SBA*, 23-cv-120-ABJ. The Court referred that matter to the Bankruptcy Court and stayed the

---

[2] The Court cited to the docket in addition to the Administrative Record, because the Administrative Record repeats AR00729-778, creating two documents with the same AR number for those pages. (ECF No. 20-5 at 269 (where the numbering goes from AR 00778 back to AR 00729). The issue is compounded by the Index, which does not provide reference to the AR page numbers, only to documents, limiting the usefulness of the Index.

proceeding pending the recommendation from the Bankruptcy Court. *Id.* at ECF No. 18.

That matter is currently pending before the Bankruptcy Court. *Smith v. SBA*, 24-mp-202.

Then, on April 24, 2023, while MSR's appeal was pending, CCB submitted a guaranty purchase request to the SBA through the SBA's forgiveness platform. (AR 01171). The SBA requested valid loan application supporting documents, including, payroll documentation, documentation that the employer had employees for whom borrower paid salaries and payroll taxes, along with the signed SBA Form 2483 and 2484, the documents provided to the lender from the borrow at origination, along with other underlying documents. (AR 01167). In response to this request, CCB submitted MSR's Form 2483, three Excel sheets, Rosen's 2019 Form 941s, MSR and Rosen's certificates of good standing, MSR's Articles of Organization, MSR's Operating Agreement and Statement. (AR 01196).

On August 24, 2023, the SBA denied the guaranty purchase request. (AR 01164-5). The reasons stated in the denial were:

> I concur with the guaranty purchase denial recommendation. The lender did not obtain the required certifications for eligibility on the 2483 and the borrower failed to meet the PPP eligibility requirements. Specifically, the borrower did not complete Question 1 of the Form 2483. The Form 2483 makes clear that if the borrower were to answer "yes" as to bankruptcy, then the loan would not be approved. The borrower was in fact in bankruptcy at the time it applied for and received the loan: In re Mountain States Rosen, LLC, 2:20-bk-20111 (Bankr. D. Wy.) (Chapter 11 petitio filed March 19, 2020). In addition, based upon the publicly available bankruptcy docket, the lender knew at the time of origination that the borrower was in bankruptcy. Furthermore, the lender's Form 2484 contains a false statement by the lender. Under Part "I" of Form 2484, the lender states that the borrower had certified to the lender that it was not presently in bankruptcy, which was false because the borrower did not answer Question 1 on Form 2483 and was, in fact, in bankruptcy. The Form 2484 makes clear that the borrower was not to receive

6

a loan if it was in bankruptcy. There is also insufficient documentation that the average monthly payroll cost for the preceding year was verified. The 2019 payroll documentation provided consists solely of a spreadsheet. No supporting 2019 documentation, tax returns, 941, etc. were provided for to verify the data for Mountain States Rosen, LLC. The Q1-Q4 941's provided in support of 2019 wages are from a different legal entity (Rosen of Colorado, Inc.) with an EIN that does not match the borrower's EIN on Form 2483. SBA cannot honor the guaranty.

(*Id.*).

## III. The Instant Suit

On March 6, 2024, CCB filed suit against the SBA under the Administrative Procedure Act ("APA") and section 525 of the United States Bankruptcy Code. (ECF No. 1). CCB seeks judicial review of the SBA's denial of CCB's guaranty purchase request and an order declaring the following:

> (i)…the SBA's implementation of the PPP is discriminatory against borrowers who are debtors in bankruptcy; (ii) setting aside as beyond the SBA's statutory authority and as arbitrary and capricious the SBA's denial of guaranty purchase of the Loan and the SBA's rule disqualifying bankruptcy debtors from eligibility for PPP loans; and (iii) enjoining the SBA from denying guaranty purchase of the PPP loan made to MSR.

*Id.* at 5.

The SBA filed the Administrative Record on October 9, 2024. (ECF No. 20). After the record was filed, CCB moved to supplement the record, seeking to have the SBA produce an administrative record for the Second Rule, the PPP's frequently asked questions ("FAQs"), and the 504 User Guide for Submitted Loan Applications (the "ETRAN Guidelines"). (ECF No. 24). The Court granted the motion to supplement to add the PPP FAQs but denied additional supplementation. (ECF No. 32). The SBA supplemented the record with those documents. (ECF No. 33).

CCB filed its opening brief on July 18, 2025. (ECF No. 34). CCB attached the declaration of Michael Marso, the bank's Chief Financial Officer and Risk Officer to its opening brief. (ECF No. 34-1). Marso's declaration generally asserts his understanding of the events leading to MSR's application and PPP loan process during the time it was happening. The declaration also asserts CCB's understanding of MSR and Rosen's relationship. (*Id.* at ¶¶ 15-18). On September 2, 2025, the SBA filed a motion to strike Marso's declaration as being outside the administrative record. The Court will consider that motion as part of this Order.

## STANDARD OF REVIEW

This matter comes to the Court under the Administrative Procedures Act ("APA"). CCB is asking the Court to review the SBA's decision denying guaranty purchase request and enjoin the SBA from relying on its rule disqualifying bankruptcy debtors from eligibility for PPP loans.

> An agency's decision is arbitrary and capricious if the agency (1) entirely failed to consider an important aspect of the problem, (2) offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise, (3) failed to base its decision on consideration of the relevant factors,' or (4) made 'a clear error of judgment."

*Am. Wild Horse Campaign v. Raby*, 144 F.4th 1178, 1188 (10th Cir. 2025) (citations and internal quotation marks omitted).

In determining whether the SBA exceeded its authority under the CARES Act, the Court "'[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority' and 'may not defer to an agency interpretation of

the law simply because a statute is ambiguous.'" *3484, Inc. v. Nat'l Lab. Rels. Bd.*, 137 F.4th 1093, 1103–04 (10th Cir. 2025) (*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 411-13, (2024)).

As it relates to the motion to strike Marso's declaration, in reviewing an agency action, the district court acts as an appellate court, and its judicial review is normally restricted to the administrative record, yet the Tenth Circuit has recognized, "consideration of extra-record materials is appropriate in extremely limited circumstances, such as where the agency ignored relevant factors it should have considered or considered factors left out of the formal record." *Audubon Soc'y of Greater Denver v. United States Army Corps of Eng'rs*, 908 F.3d 593, 609 (10th Cir. 2018) (quoting *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (10th Cir. 2004)) (cleaned up).[3]

## DISCUSSION

### I.  Motion to Strike Marso's Declaration

The Court will first consider SBA's motion to strike Marso's declaration. As previously noted, in addition to filing their opening brief, CCB attached and relied on a declaration from Michel Marso, CCB's Chief Financial Officer and Risk Officer. (ECF No. 34-1). That declaration generally provides CCB's justification for providing the loan, including its statement that MSR received assurances from policy makers that were familiar with the PPP assured MSR it would be eligible. (ECF No. 34-1 at ¶¶ 7-8). It also

---

[3] *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) ("The complete administrative record consists of all documents and materials directly or indirectly considered by the agency.") (citations omitted).

explains that while MSR did not check the box about bankruptcy, CCB did mark that yes, MSR was in bankruptcy at the time of the application. (*Id.* at ¶¶ 11-12). Marso also claims that "from time to time" SBA would reject some of the PPP application CCB submitted based on the information obtained through the portal. (*Id.* at ¶ 12). It also asserts CCB's understanding of the payroll records that it received from MSR. (*Id.* at ¶¶ 15-17).

The SBA argues that CCB waived its right to supplement the record with this information and that the declaration is not properly part of the record. In response, CCB claims the declaration provides important background information that the Court should consider. Additionally, CCB claims that the declaration goes to whether the Court should set aside the April 28, 2020 Rule. CCB also asserts these facts are in the pending MSR bankruptcy appeal of the SBA's denial of its loan forgiveness request, so the Court can take judicial notice of them.

The Tenth Circuit has generally prohibited extra-record evidence except in extremely limited circumstances. *Am. Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985), *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1160 (10th Cir. 2022). These narrow circumstances include the following:

> (1) that the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) that the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) that the agency considered factors that were left out of the formal record; (4) that the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) that evidence coming into existence after the agency acted demonstrates that the actions were right or wrong.

*Am. Mining Cong.*, 772 F.2d at 626 (citations omitted) (cleaned up).

The Court finds that none of the information in the declaration meets the requirements for supplementing the record. The current administrative record contains both MSR's original application, along with the information CCB entered into the portal. (AR 0007-0010; AR 276-278). The information regarding the documents MSR provided to CCB to support their payroll requests are also in the record. Finally, information from CCB to the SBA related to MSR's assurance from policy makers are also in the record as part of the documents for MSR loan forgiveness records. (AR 739-749 [ECF No. 20-5 at 279-289]). Additionally, while the Court may take judicial notice of other proceedings and rulings in other cases, arguments and evidence from the parties in those proceedings are not "facts" that require judicial notice. Finally, Marso's statement regarding instances where the SBA would reject a PPP application is too vague and conclusory for the Court to consider.

For all these reasons, the Court agrees that Marso's declaration is improper. The SBA's motion to strike Micheal Marso's declaration is GRANTED. The declaration and portions of CCB's opening brief relying on the declaration shall be stricken from the record.

## II.    The SBA's Guaranty Purchase Decision

The question before the Court is whether the SBA's decision to deny CCB's guaranty purchase request ("Guaranty Purchase Decision") was arbitrary and capricious, or otherwise not in accordance with law. The SBA denied the purchase guarantee for three primary reasons, 1) that the CCB did not obtain the required certifications for eligibility required on Form 2483; 2) that CCB's Form 2484 incorrectly certified that the lender was

not in bankruptcy, when MSR was in bankruptcy; and 3) insufficient documentation that the average monthly payroll cost for the preceding year was verified. (AR 1164-1176).

In seeking to set aside the Guaranty Purchase Decision, CCB claims the decision was arbitrary and capricious and that the SBA's rule excluding bankruptcy debtors from participation in the PPP exceeded the SBA's statutory authority. (Doc. 34 at 5). Additionally, CCB claims the documents it relied on in verifying the payroll amounts complied with SBA's own guidelines. (*Id*). Given that the primary issue in this case is MSR's involvement in bankruptcy, the Court will first consider whether the SBA's determination to exclude bankruptcy debtors from the PPP exceeded their statutory authority.

### A. SBA's Exclusion of Bankruptcy Debtors From Eligibility for PPP Loans.

CCB challenges the SBA's rule excluding bankruptcy debtors from eligibility in obtaining PPP loans. CCB asserts that the exclusion rule was arbitrary and capricious, exceeded SBA's statutory authority, and unlawfully discriminated against bankruptcy debtors. As an initial matter, the SBA challenges CCB's standing to challenge the rule.

### 1. CCB's Standing to Challenge SBA's Bankruptcy Exclusion Rule

The SBA initially challenges CCB's standing to challenge the rule excluding bankruptcy debtors, because CCB has not suffered any injury from SBA's decision to exclude debtors in bankruptcy from the PPP. (ECF No. 38 at 25). SBA asserts that CCB was not a debtor in bankruptcy that was excluded from the PPP or otherwise harmed by the rule. (*Id*. at 26). CCB asserts that it has been harmed by the bankruptcy exclusion rule because it is part of the reason for SBA's guaranty purchase denial.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Murthy v. Missouri*, 603 U.S. 43, 56 (2024). "The case or controversy requirement is fundamental to the judiciary's proper role in our system of government." *Id.* (citations and internal quotation marks omitted). "Federal courts can only review statutes and executive actions when necessary 'to redress or prevent actual or imminently threatened injury to persons caused by ... official violation of law.'" *Id.* (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 492 (2009).

A proper case or controversy exists only when the plaintiff has established standing to sue. *Murthy*, 603 U.S. at 57. To establish standing, the plaintiff must show they have or will suffer "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted).

CCB claims that it was injured by the rule because it gave a PPP loan to an ineligible bankruptcy debtor. The bankruptcy exclusion partially formed the basis for the SBA's denial of CCB's loan guaranty purchase request. Essentially, CCB asserts that if not for the exclusion of bankruptcy debtors from PPP, a portion of SBA's denial of its loan guarantee request would no longer be valid.

However, as the SBA appropriately points out, CCB was not injured by SBA's decision to exclude small business debtors in bankruptcy from obtaining PPP loans. The rule did not prevent CCB from obtaining a PPP loan because of its status as a bankruptcy debtor. Thus, CCB did not suffer a direct harm from the exclusion rule. Here, CCB was not personally injured by the exclusion rule. Rather, CCB's claimed injury is the SBA's

denial of its guaranty purchase of MSR's loan, based on MSR's ineligibly for a PPP loan because it was a debtor in bankruptcy. Thus, the question is one of causation, are CCB's injuries "fairly traceable to the challenged action of the defendant[?]" *Friends of the Earth, Inc. v. Laidlaw Env't Servs*. (TOC), Inc., 528 U.S. 167, 180 (2000).

The SBA asserts that CCB's injury, the loss of the guaranty purchase, did not arise from the bankruptcy debtor exclusion to the PPP, but rather its failure to perform its underwriting obligations, which it voluntarily assumed and has not challenged. (ECF 38 at 29). The Court agrees.

CCB's injury in this case comes from its decision to process a loan by a debtor in bankruptcy. The exclusion rule did not specifically impact CCB or prevent it from receiving funds. Rather, the exclusion rule created a condition that small businesses had to meet (that they could not be in bankruptcy) for eligibility for a PPP loan. CCB was required to apply that rule in performing its function of approving PPP loans, but it was otherwise not directly affected by the rule. Thus, CCB cannot demonstrate standing to challenge the exclusion rule.

### 2. The Bankruptcy Exclusion is Lawful

While the Court finds that CCB lacks standing to challenge the exclusion rule, the Court will address validity of the rule for purposes of providing a full record. CCB claims that the bankruptcy exclusion rule was arbitrary and capricious, outside SBA's statutory authority, and/or violated the antidiscrimination provisions of the Bankruptcy Code.

CCB primarily relies on a bankruptcy decision from the District of New Mexico, *In re Roman Cath. Church of Archdiocese of Santa Fe*, 615 B.R. 644 (Bankr. D.N.M. 2020).

In that case, the bankruptcy court found that the SBA's decision to exclude bankruptcy debtors from the PPP was arbitrary and capricious, violated the SBA's authority under the CARES Act, and violated the Bankruptcy Code's antidiscrimination provisions. *Id.* The Court does not find CBE's reliance on this case compelling for several reasons.

First, the SBA appealed that case to the district court, where the Magistrate Judge issued Proposed Findings and Recommendation of Disposition to reverse the Bankruptcy Court findings. *U.S. Small Bus. Admin. v. Roman Cath. Church of Archdiocese of Santa Fe*, 632 B.R. 816, 846 (D.N.M. 2021). Additionally, that case is contrary to most courts that have considered appropriateness of the bankruptcy exclusion.

Most courts that have considered the validity of the bankruptcy exclusion have determined that SBA's bankruptcy exclusion was lawful, finding either that it was not arbitrary and capricious and/or that it did not violate the antidiscrimination provisions of the Bankruptcy Code. *See Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 410 (2d Cir. 2022) (finding that exclusion did not violate antidiscrimination provision of Bankruptcy code and listing cases at FN 12); *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1249 (11th Cir. 2020); *U.S. Small Bus. Admin. v. Weather King Heating & Air, Inc.*, 648 B.R. 200, 215 (N.D. Ohio 2023); *Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020). While these cases were decided using Chevron deference, the Court finds that the analysis supports the same finding under the requirements of *Loper Bright*. In considering whether the SBA's bankruptcy exclusion was proper, the Court first looks to the statutory authority for the PPP.

### a. The bankruptcy exclusion was an appropriate exercise of SBA's authority.

The Administrative Procedure Act requires that the Court "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). The first question is whether the bankruptcy exclusion exceeded SBA's authority. In determining whether the SBA exceeded its authority under the CARES Act, the Court "'must exercise their independent judgment in deciding whether an agency has acted within its statutory authority' and 'may not defer to an agency interpretation of the law simply because a statute is ambiguous.'" *3484, Inc. v. Nat'l Lab. Rels. Bd.*, 137 F.4th 1093, 1103–04 (10th Cir. 2025) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 411-13, (2024)).

As previously noted, the PPP was included as part of the CARES Act to assist small businesses with meeting their payroll and operating expenses to keep workers employed during the COVID-19 pandemic. 15 U.S.C. § 636(a)(36). "Rather than establishing the PPP as a standalone program, the CARES Act place[d] the PPP under Section 7(a) of the Small Business Act, providing that the SBA 'may guarantee covered [PPP] loans under the same terms, conditions, and processes' as other Section 7(a) loans. *Springfield Hosp., Inc.*, 28 F.4th at 410 (citing 15 U.S.C. § 636(a)(36)(B)). Thus, the Act delegated PPP loan approval to lenders approved by the SBA, such as CCB. 15 U.S.C. § 636(a)(36)(F)(ii)(I). The Act relaxed and waived some Section 7(a) loan requirements. 15 U.S.C. §§ 636(a)(36)(D), (H)–(J), (R). However, the Act did not exempt Section 7(a)'s

16

requirement that loans shall be of "sound value." 15 U.S.C. § 636(a)(6). The Act directed the SBA to issue emergency regulations governing the implementation of the PPP within 15 days, exempting them from the rulemaking notice requirements. 15 U.S.C. § 9012. The Act also provides that the SBA "may guarantee covered loans under the same terms, conditions, and processes" as § 7(a). *Id.* § 636(a)(36)(B). "The use of the permissive word 'may' vests the SBA with discretionary authority." *In re Gateway Radiology Consultants, P.A.*, 983 F.3d at 1257 (citation omitted).

The CARES Act left several aspects of the implementation of the PPP to the SBA's discretion through rule making. Given the CARES Act statutory framework, placing PPP into the 7(a) loan program, the Court finds that the SBA had statutory authority to create rules for PPP eligibility, including the bankruptcy exclusion.

### b. The bankruptcy exclusion rule is not arbitrary or capricious.

The next issue is whether SBA's exclusion of debtors in bankruptcy from the PPP was arbitrary and capricious. The Court must "set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "A rule is 'arbitrary and capricious if the agency . . . relied on factors . . . Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Bradford v. U.S. Dep't of Lab.*, 101 F.4th 707, 730 (10th Cir. 2024) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In the First Rule, the SBA took steps to comply with the "sound value" requirement, such as requiring borrowers to sign promissory notes with the interest rates and outlining repayment terms. 85 Fed. Reg. 20,813. The First Rule also clarified that "[i]f you use PPP funds for unauthorized purposes, SBA will direct you to repay those amounts." (*Id.* at 20,814).

While the First Rule did not expressly prohibit bankruptcy debtors, the First Rule referenced SBA Form 2483 (Paycheck Protection Application) and SBA From 2484 (Lender Certification Form). (*Id.* at 20814). The very first question of Form 2483, the PPP borrower application, inquired: "Is the Applicant...presently involved in any bankruptcy?" (ECF No. 20-6 at 253 [Administrative Record ("A.R") 01177]). The application clearly states that loans would not be approved if the answer to Questions (1) or (2) was "Yes." (*Id.*).

On April 20, 2020 the SBA issued additional eligibility requirements. 85 Fed. Reg. 21747. Then on April 28, 2020, the SBA provided an updated interim final rule, which for the first time expressly stated that bankruptcy debtors were ineligible. 85 Fed. Reg. 23450. Specifically, the Second Rule provided: "If the applicant or the owner of the applicant is the debtor in a bankruptcy proceeding, either at the time it submits the application or at any time before the loan is disbursed, the applicant is ineligible to receive a PPP loan." *Id.* at 23,451. The Second Rule also contains a rationale for the requirement: "providing PPP loans to debtors in bankruptcy would present an unacceptably high risk of an unauthorized use of funds or nonrepayment of unforgiven loans." *Id.* It adds that "the Bankruptcy Code does not require any person to make a loan or a financial accommodation to a debtor in

bankruptcy." *Id.* And it points out that SBA Form 2483, "which reflects this restriction in the form of a borrower certification, is a loan program requirement." *Id.*

In considering whether the bankruptcy exclusion is arbitrary and capricious, this case is unusual because the emergency nature of the PPP, the short timeframe for the SBA to create the rules and provide funding, and the exclusion of the rules from the notice and comment provisions. However, in considering the SBA's explanation for the bankruptcy exclusion, the SBA provided rational explanations, including the concern that debtors in bankruptcy would create a high risk of unauthorized use of funds or nonpayment of unforgiven loans.

There is no basis for this Court to find that the SBA did not consider any important aspect of the problem, nor is the explanation implausible. During oral argument CCB's counsel argued that debtors in bankruptcy have significant oversight in how they are spending funds, so there is less opportunity for them to misspend these funds. While this may be true, bankruptcy debtors are also already receiving all the protections of the bankruptcy process, that other small businesses were not receiving. Additionally, while bankruptcy is not automatically disqualifying for other 7(a) loan programs, there is the "sound value" requirement, that would require additional review to ensure that any such loan was of "sound value." 15 U.S.C. § 636(a)(6). Given the streamlined nature of PPP and the need for bright line rules, using a bright line exclusion to replace the usual lending criteria was not arbitrary and capricious.

In considering this question, the Eleventh Circuit found:

>    Bankruptcy debtors are financially distressed and have competing
>    creditors, which it is not implausible to believe will increase the risk of
>    unauthorized use of funds and non-repayment. We will not substitute our
>    view for the SBA's judgment that the gravity of the risk is "unacceptably
>    high." The SBA has long considered bankruptcy status as relevant to § 7(a)'s
>    sound value requirement and creditworthiness regulations. That it fashioned
>    its consideration of bankruptcy status into a streamlined and bright-line rule
>    that would speed up decisions about whether PPP loans should be made is
>    not implausible, irrational, or the product of arbitrary and capricious decision
>    making.

*In re Gateway Radiology Consultants, P.A.*, 983 F.3d at 1263. The Court agrees with this

analysis. For these reasons, the Court finds that the SBA's bankruptcy exclusion was not

"arbitrary and capricious."

### c. The bankruptcy exclusion does not violate 11 U.S.C. § 525(a).

CCB's final argument for asking the Court to find the bankruptcy exclusion

impermissible is that the exclusion of bankruptcy debtors from PPP violated § 525(a) of

the Bankruptcy Code. Specifically, that statute provides in relevant part that:

>    [A] governmental unit may not deny, revoke, suspend, or refuse to renew a
>    license, permit, charter, franchise, or other similar grant to, condition such a
>    grant to, discriminate with respect to such a grant against, deny employment
>    to, terminate the employment of, or discriminate with respect to employment
>    against, a person that is or has been a debtor under this title or a bankrupt or
>    a debtor under the Bankruptcy Act, or another person with whom such
>    bankrupt or debtor has been associated, solely because such bankrupt or
>    debtor is or has been a debtor under this title or a bankrupt or debtor under
>    the Bankruptcy Act, has been insolvent before the commencement of the case
>    under this title, or during the case but before the debtor is granted or denied
>    a discharge, or has not paid a debt that is dischargeable in the case under this
>    title or that was discharged under the Bankruptcy Act.

11 U.S.C.A. § 525(a).

First, while the Court would note that it has previously found that CCB lacks

standing to challenge the rule, it is even more apparent that it lacks standing to assert the

protections of the bankruptcy antidiscrimination act, when it is not an entity that is in bankruptcy. While CCB suggests that it has an interest in the rule, the intent of the rule is to protect bankruptcy debtors, not the entities that might do business with them. However, to the extent that CCB has some ability to assert this claim, the Court finds that that the PPP is a loan program not subject to the provisions of Section 525.

As previously noted, the CARES Act created the PPP as an addition to the SBA § 7(a) loans. The Act makes clear that the funds in the PPP are loans, not "a license, permit, charter, franchise, or similar grant[.]" 15 U.S.C. § 636(36)(A). The PPP applies to "covered loans" and the Act uses the term "loan" throughout. *Id.* While the loans could be forgiven if certain conditions were met, as previously noted, borrowers were required to provide promissory notes and were subject to repayment in a number of circumstances. The clear language of the statute takes it out of the purview of § 525(a). Thus, PPP loans are not protected by § 525(a).

### 3. The SBA's Purchase Guaranty Denial is not arbitrary and capricious

Having found that the SBA's bankruptcy exclusion was appropriate, the Court returns the primary question of whether the SBA's Guaranty Purchase Decision was arbitrary and capricious. As previously noted, the SBA's based its decision denying CCB's guaranty purchase request on three primary reasons 1) that the CCB did not obtain the required certifications for eligibility required on Form 2483; 2) that CCB's Form 2484 incorrectly certified that the lender was not in bankruptcy, when MSR was in bankruptcy; and 3) Insufficient documentation that the average monthly payroll cost for the preceding year was verified. (AR 1164-1176).

21

### a. SBA properly denied CCB's guaranty purchase because CCB approved MSR's loan when it was ineligible for PPP.

CCB asserts that the SBA's denial of the guaranty purchase on grounds that MSR did not complete Question 1 of Form 2483 was arbitrary and capricious because CCB answered yes to that question when it submitted MSR's application on April 14, 20202. CCB claims that SBA's assertion that it failed to meet its underwriting obligations is a post hoc justification.

It appears that CCB misunderstands SBA's decision. The SBA's denial is essentially that MSR was ineligible for a PPP loan because it was involved in a bankruptcy. Additionally, unlike other cases where the borrower misrepresented their bankruptcy status, CCB was aware of MSR's status, yet it approved the loan. Under the PPP, the lending bank were responsible for having borrowers fill out Form 2483 to establish their eligibility. Then the bank completed Form 2484 confirming eligibility. Without any support, CCB claims that the completion of Form 2484 was not an underwriting responsibility. However, the Rule clearly required a completed Form 2483 and Form 2484. The First Rule asked:

b. What do lenders have to do in terms of loan underwriting?

Each lender shall:

i. Confirm receipt of borrower certifications contained in Paycheck Protection Program Application form issued by the Administration;

ii. Confirm receipt of information demonstrating that a borrower had employees for whom the borrower paid salaries and payroll taxes on or around February 15, 2020;

      iii. Confirm the dollar amount of average monthly payroll costs for the preceding calendar year by reviewing the payroll documentation submitted with the borrower's application; and

      iv. Follow applicable SBA requirements:

83 Fed. Reg. 20815.

      The First Rule also provided the following:

      q. What forms do I need and how do I submit an application?

      The applicant must submit SBA Form 2483 (Paycheck Protection Program Application Form) and payroll documentation, as described above. The lender must submit SBA Form 2484 (Paycheck Protection Program Lender's Application for 7(a) Loan Guaranty) electronically in accordance with program requirements and maintain the forms and supporting documentation in its files.

83 Fed. Reg. 20814. Significantly, Form 2483 provided the necessary information for lenders to confirm borrower eligibly and Form 2484 certified that the lenders received and confirmed all the necessary information for eligibility.

      The first question on Form 2483 asks: "Is the Applicant or any owner of the Applicant . . . presently involved in any bankruptcy?" (AR 01177). The application clearly states: "If question (1) or (2) below are answered 'Yes' the loan will not be approved." (*Id.*). Had MSR properly completed its application, its answer the first question would have been "yes" and its loan should not have been approved. While CCB claims this language is in the passive voice and it is not clear who would not approve the loan, the PPP itself explains that the banks were responsible for determining eligibility. So, in this instance, it was CCB that should not have approved the loan.

That CCB should not have approved MSR's loan also clear in Form 2484, which required the lender to confirm that "Applicant has certified to the Lender that neither the Applicant nor any owner (as defined in the Applicant's SBA Form 2483) is . . . presently involved in any bankruptcy." (AR 01182). Additionally, the lender had to confirm that it had obtained and reviewed the required application, including the documents demonstrating qualifying payroll amounts. (AR 01183). Contrary to CCB's arguments, SBA Form 2483 and 2484, along with the bankruptcy exclusion that were imbedded in those forms, were incorporated into the First Rule. *See Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 411 (2d Cir. 2022) ("Moreover, although the first interim final rule did not specify that all bankruptcy debtors were ineligible to receive PPP funds, it established the use of the PPP Application form, which asks applicants whether they are 'presently involved in any bankruptcy' and provides that, if the applicant's answer is "'Yes,' the loan will not be approved.'"); See also *United States SBA v. Weather King Heating & Air, Inc.*, 648 B.R. 200, 221–22 (N.D. Ohio 2023) ("The bankruptcy exclusion had been in place since the First IFR.").

In this case, CCB allowed MSR to submit an incomplete application, because MSR left the first question on the application blank. (AR 00007). This was a qualifying question and the application clearly indicated if the borrow said yes, then the application would not be approved. Then, despite knowing that MSR was in bankruptcy, CCB confirmed that MSR "has certified to the Lender that neither the Applicant nor any owner . . . [is] presently involved in any bankruptcy." (AR 00277). This statement was false. By submitting that false statement and accepting an incomplete application, CCB failed in its underwriting

obligations. 83 Fed. Reg. 20815 (requiring lender to "[c]onfirm receipt of borrower certifications contained in Paycheck Protection Program Application form issued by the Administration.").

CCB claims that when they uploaded MSR's application, they checked yes on the Question #1 and the SBA approved the loan knowing they were in bankruptcy. CCB's assertion that by providing a loan number that SBA "approved" the application is unsupported by the record. First, CCB's argument fails to recognize that by uploading an application with information that differed from the signed application MSR submitted, it at a minimum, failed to obtain a complete application with the required certifications from MSR, in violation of its underwriting requirements. Additionally, it ignores CCB's certification on Form 2484 that the borrower had certified to the lender that they were not in bankruptcy, which was false.

Finally, by providing a loan number the SBA did not "approve" the loan. Rather, SBA relied on the banks to approve loans in the first instance. As part of the E-Tran submission, CCB certified that the submitted information was true and correct to the best of its knowledge. (AR 00753(2); [ECF No. 20-5 at 293]). CCB agreed that "Lender is aware and acknowledges that SBA will not review eligibility prior to issuing a loan number and that if an SBA loan number is assigned and SBA later learns that the loan is not eligible, SBA may deny liability on its guaranty." (*Id.*). CCB acknowledged when it submitted the loan application that it was aware SBA would not review eligibly prior to issuing a loan number and that the SBA may deny liability on ineligible loans. That is exactly what happened in this case.

The SBA did not act arbitrarily or capriciously in denying CCB's guaranty loan request where CCB knowingly approved and uploaded an ineligible loan application and incorrectly certified that the applicant had provided certification that it was not in bankruptcy proceedings.

### b. CCB failed to obtain the necessary payroll records.

SBA's denial of CCB's purchase guarantee is adequately supported by the fact that CCB approved an ineligible loan and can be affirmed on that basis alone. However, the Court will also consider whether the SBA's decision to deny the guaranty purchase request because CCB failed to "review payroll documents" was arbitrary and capricious. In denying CCB's guaranty purchase request, the SBA asserted:

> There is also insufficient documentation that the average monthly payroll cost for the preceding year was verified. The 2019 payroll documentation provide consists solely of a spreadsheet. No supporting 2019 documentation, tax returns, 941, etc. were provided [] to verify the data for Mount States Rosen, LLC. The Q1-Q4 941's provided in support of 2019 wages are from a different legal entity (Rosen of Colorado, Inc.) with an EIN that does not match the borrower's EIN on Form 2483.

(AR 01164-5).

The First Rule required lenders to "[c]onfirm the dollar amount of average monthly payroll costs for the preceding calendar year by reviewing the payroll documentation submitted with the borrower's application" 85 Fed. Reg. at 20815. Applicants were required to submit "documentation as is necessary to establish eligibility such as payroll processor records, payroll tax filings, or Form 1099-MISC[.]" 85 Fed. Reg. 20812. Thus, CCB was required to review these records to confirm eligibility. However, the only payroll documentation that MSR provided to support their application was a FTE Calculation

Worksheet as of 4-17-2020; MSR et al Payroll 12-month average; and Payroll Detail from Rosen of Colorado. (AR 01169). As the SBA notes, CCB based its review on payroll documentation from a separate entity (Rosen of Colorado) and an excel spreadsheet created by MSR. These are not the documents required by the First Rule.

The SBA is also correct that CCB's reliance on Rosen's 941's does not itself demonstrate that those amounts were appropriately provided to MSR. CCB asserts that Rosen was a single-purpose, captive entity that existed solely to employ people who provided labor for MSR and that MSR exclusively funded Rosen's payroll obligations, making their payroll attributable to MSR for PPP. (FAQ 10, 72; ECF No. 33-1 at 7, 31). However, there is no evidence in the documentation that MSR contracted with Rosen as a payroll provider. There is no contract between MSR and Rosen establishing such a relationship. Additionally, the Court agrees with the SBA that FAQ 1 does not allow CCB to "rely on borrower representation with respect to payroll costs." (FAQ 1; ECF No. 33-1 at 1-2). The question asks whether the First Rule requires the lender to replicate each of the borrower's calculations. (*Id*.). The response generally provides that borrowers are responsible for attesting to the accuracy of the calculations. The answer goes on to provide that: "Lenders are expected to perform a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning average monthly payroll cost." (*Id*.). "In addition, as the PPP Interim Final Rules indicate, lenders may rely on borrower representations, including with respect to amounts required to be excluded from payroll costs." *Id.* However, the answer also goes on to provide: "If the lender identifies errors in the borrower's calculation or material lack of substantiation in the borrower's

supporting documents, the lender should work with the borrower to remedy the issue."
(*Id.*). Thus, CCB was still required to obtain necessary payroll documentation from MSR,
in this case, some justification for its use of Rosen's 941 documents.

For all these reasons, the Court finds that the SBA's determination that CCB failed
its underwriting responsibilities based on the documents it initially reviewed and collected
is not arbitrary and capricious.

**CONCLUSION**

For all the above stated reasons, the Court finds SBA's Motion to Strike (ECF No.
37) is GRANTED. The Court will strike the declaration and those portions of CCB's brief
that rely on the declaration.

The Court also finds that CCB does not have standing to challenge SBA's
bankruptcy exclusion rule. However, even if CCB could challenge the rule, SBA's
exclusion of bankruptcy debtors from PPP was within its statutory authority and was not
arbitrary or capricious. Additionally, the exclusion rule does not violate the bankruptcy
antidiscrimination provisions of 11 U.S.C. § 525(a). Finally, SBA's Loan Guaranty Denial
was not arbitrary or capricious. The SBA properly determined that CCB provided an
ineligible loan to MSR in contravention of the requirements of the application and CCB's
certification. This provides a sufficient basis for the SBA to deny the loan guaranty.
Additionally, the SBA's determination that CCB failed its underwriting responsibilities by
failing to obtain sufficient payroll documentation is not arbitrary and capricious. For these
reasons, SBA's Loan Guarantee Denial is AFFIRMED.

**IT IS ORDERED** that SBA's Motion to Strike (ECF No. 37) is **GRANTED**.

28

**IT IS FURTHER ORDERED** that SBA's decision denying CCB's loan guaranty repurchase is **AFFIRMED**.

Dated this __15th__ day of January, 2026.

Alan B. Johnson
United States District Court Judge